Please rise. Mr. Porter is now in session. You may be seated. The clerk will call the next case. 3-14-0149 Stephen Camerick v. Virgin Graves Trust Callous v. Richard Porter v. Walnut, RID-WIN LLC, Amelie v. James Griffin Mr. Porter, you may proceed. Thank you. May it please the Court. My name is Richard Porter, and I represent all of the appellants in this matter. This Court should reverse the Circuit Court's order granting Walnut, RID-WIN's motion for summary judgment and reverse the Court's order denying the plaintiff's motion for summary judgment. The trial court's ruling was built on a house of cards on an erroneous conclusion that the county zoning hearings were not an administrative or quasi-judicial hearing, which required due process. The trial court apparently mistakenly believed that the Claring case and its progeny were no longer good law, and thus failed to use the LaSalle factors as required in the substantive due process claim. We claimed a property value impact from the procedures that were employed and the occurrences that happened at the trial court level that was a substantive due process claim, and the Court was required to apply the LaSalle factors, and it failed to do so, on the grounds that the underlying hearings were not administrative. The Court used that same flawed analysis, and thereby failed to issue an order reversing the county vote, despite unrefuted evidence of prejudicial ex parte communications by the applicant with the decision maker, and evidence that the actual transcripts and hearing record were kept under lock and key and not accessible to the county board. Further, the trial court should have found that the original 2008 permits, eight years ago, were void, because the county board did not have jurisdiction to grant those permits. The plaintiffs were entitled to procedural and substantive due process at the county level, and did not receive it. What about the statute, 12012.1, that says any decision by the county board of any county home rule or non-home rule in regard to any petition or application for a special use, variance, etc., etc., shall be subject to de novo review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes? That statute definitely establishes that the administrative review that we are seeking and sought involves looking at it as a legislative decision, meaning that we have to prove that it was arbitrary and capricious. However, that does not speak to what the procedures were entitled to at the underlying county board hearing. That statute was very clear that all it was doing was addressing the judicial review standard. What we're going to do after we appeal. It did not address or change in any way Clarin, which held that a zoning hearing was entitled to due process. As a matter of fact, you quoted some of the most important language, because it said, regardless of whether due process in relation thereto is considered administrative for other purposes. For other purposes, but that is other purposes rather than a legislative decision? Other purposes rather than a legislative decision? Well, the decision is definitely a legislative decision, but the process, the hearing, is still an administrative quasi-judicial hearing. Clarin has never been overruled in relation to that. As a matter of fact, not only is that plain language in that particular section of regardless of whether it's considered administrative for other purposes, the other purpose is at the hearing. The hearing itself is administrative, though the decision is reviewed as a legislative decision. Also, you need to look at 1201.2.1b, which explicitly provided that substantive and procedural due process apply at all stages of the decision making and review. We go back then to what was the due process required at the county level? Clarin explicitly held that the reasons for classifying zoning hearings that deal with special use applications as administrative or quasi-judicial are manifest. In these hearings, the property rights of the interested parties are at issue. As a result, those parties must be afforded the due process rights normally granted to individuals whose property rights are at stake. The case law points out that Clarin is still good law. The Mercatus case, the Our Savior case, and the Libertyville case all held that while that new statute involves a different standard of review, it has to be arbitrary and capricious. Let me explain. Clarin was passed. Several subsequent cases then addressed Clarin. Clarin only looked at what were the procedures at the special use hearing. The procedures entitled due process, which included the right to cross-examine witnesses. And Clarin is prior to the statute. Correct. Clarin is prior to the statute. This statute got passed later. Correct. After Clarin occurred, there were a variety of cases. The Galec case is a big one. They then took Clarin to the next step and said, okay, that means that the standard of review is manifest weight instead of arbitrary and capricious. That's what the legislature wanted to address with 1201.2. No, we're not applying the administrative standard of review manifest weight of the evidence. We're applying the more difficult standard of review, which is arbitrary and capricious. But the statute went a long way to make clear that it wasn't changing anything that Clarin had found. Clarin only dealt with what the process was at the zoning hearings. That was repeated in the Mercatus case, Mercatus v. Lake Forest Hospital, 7th Circuit, 2011, which said special use hearings are characterized as legislative for the purposes of judicial review. That's where we are. While at the same time it is deemed adjudicative for the purposes of determining what process is due at the hearing. That was what was required at the county level, was an adjudicative due process. Likewise, the Our Savior case, 2nd District, 2009, explicitly held that the amendment to the county's code limited only the mode of direct judicial review over the listed zoning decisions, not the application of due process to any of those decisions. At no time has Clarin ever been reversed as to what due process was required at the county board level. That's repeated again in the Ashley Libertyville case, and perhaps most persuasive is the legislative history for that statute you're talking about, Judge. That one explicitly, the legislative history, and particularly Representative Mathias, was quoted as saying that the statute was not intended to question the central conclusions in Clarin regarding the legal character of special use permit decisions or due process. Nothing in the statute is intended to excuse municipalities and counties for conducting the proceedings in a fundamentally fair manner, consistent with the principles of due process. Clearly, at no time has there ever been any authority, that statute doesn't, no case law has ever held, that at a zoning hearing the plaintiffs are not entitled to due process. And unfortunately, the trial court missed that. Let me switch gears on you just a minute, and of what effect is, let's go back to the beginning, of what effect is the fact that these cuts were issued 71 days after the last public hearing? So, in 2008, the initial CEPs were issued 71 days after the public hearing. The statute provided, the statute there is 12020, that's the Wind Farm statute, and it says there shall be at least one public hearing, not more, than 30 days prior to a siting decision of the county board. There's all kinds of case law that establishes, when you use that negative language, when it comes to a time limitation, not more than. It is mandatory, it's not directory, it is not discretionary, it is mandatory, and if you get past that date, there's a loss of jurisdiction. That jurisdictional issue, there's also ample case law, can be brought up at any time, in any court. I could bring up, right now, an oral argument, having never mentioned it. Now, I did mention it in the trial court, and I did mention it. And the effect of a loss of jurisdiction would mean that the original cuts are both. Correct. And the way that the court got around that, at the trial court level, was to say that, no, this is a legislative issue, and the law that you can bring up a jurisdictional question at any time, in any court, at any time, are under the administrative laws. That's where those cases come from. The court said, well, this isn't an administrative case, because we've got a statute that says it's a legislative decision. The court was confusing the decision with the hearing, the due process. It is still a quasi-adjudicative hearing. It is still an administrative hearing that now has a harder standard of review. And if the court had realized that, he would have understood, then, that the jurisdictional issue can be raised at any time. And we actually raised it at the county board level, at the trial court level, and, of course, I'm raising it again here at the appellate level, that the original 2008 CUPs were void, and, therefore, we win. Not only should their summary judgment be reversed, but ours should be granted. There's another similar topic. There are the ex parte communications that occurred here, and they were the most egregious that I've seen. After the Zoning Board of Appeals recommended denial and made all kinds of findings of fact that this proposed project would be detrimental to public health, safety, and welfare, Walnut Ridge WINS sent correspondences in April 4, 2011, and April 8, 2011, to the county board members. Each county board member did not copy the objectors, did not copy me. They also made phone calls to the county board members. And, unbelievably, what that letter, that April 8 letter, particularly provides is, please grant us our extensions, because we need to get additional financing in 90 days. If you give us our extensions, we can go get our financing, but we won't use those extensions. We're going to file all new applications. And, therefore, there will be no harm in you going and granting this, despite the fact that your Zoning Board of Appeals just told you not to, and that it was missing all kinds of required reports, like shadow flicker studies, noise studies, environmental studies, and TV and television interference studies. Go ahead and ignore all that, because if you give us this, within the coming months, is their exact language, we will file all new applications. Three years later, they had not filed new applications. They eventually filed applications for the conditional use permits for the turbines, but not for all the infrastructure, not the underground transmission lines, the substations, or the staging areas. That's why we're still in front of you today, because they want to rely on these 2008 conditional use permits for that infrastructure, despite this false ex parte communication that was submitted to the county board members. Having insult to injury goes very... The issue with that is, if they had done it, well, the hearing process in the Zoning Board, clearly that would have been very questionable, but when that concludes, and then it becomes a matter for the county board just to take a yes or no, and that's a legislative function, aren't those appropriate communications to have? No. In Illinois, as I'm sure you're aware, unfortunately, we only get to present our case to the Zoning Board of Appeals. The wind turbine statute, 12020, requires that there be a public hearing. That public hearing is only to the Zoning Board of Appeals. That Zoning Board of Appeals is the only entity that is taking in the evidence. And so, if you're... And that record is then supposed to be made available to the county board. It wasn't here, and that's another... We know that anybody asked for it, or that it was... We know that no one asked for it. We know that it was under lock and key. We know that no one reviewed it. But that doesn't mean it wasn't made available. It just means that nobody asked to see it. None of the county board members asked to see that. Well, we... As far as... I asked this question at deposition, and was told that no one knew who to ask for the transcripts, though none of them took initiative to find out. You are correct about that. But they were under lock and key, and were never made accessible. Most times, they're on a web page, or they're actually copied and sent to the county board members. Here, they were just put in a file cabinet behind a locked door, and that was it. They were never provided to or given access... The county board never had access to them. Now, constituents... Are you saying that they would not also be able to voice their objection to a county board member? The way the law comes down in that is, it's improper. In all sorts of landfill cases, those are improper ex parte communications. Whether objectors do it or proponents do it, if you do it outside of the public hearing, it is an improper ex parte communication. We're talking about if it's a legislative decision pursuant to these matters. Correct. Those other things aren't about legislative decisions, are they? Actually, once you give a zoning approval, that's arguably a legislative decision as well. But remember, the process isn't a legislative process. The process is a quasi-judicial, where the entity that takes in the facts is the Zoning Board of Appeals. They make a recommendation. They establish the record. That's then given to the legislative body. The law requires that the board is limited to those facts at the prior hearings when they are able to make their decision. The law of due process. You have to have a public hearing. If you're going to have a public hearing, which Clarence tells us must include a right to cross-examine, it must include a right to appear and provide your testimony. There are cases where county boards, when they're making their decision, there are hearings in front of the board. There's give-and-take witnesses called in front of the board. You know, it can happen. I know of no appellate cases, but I have been in front of county. They don't have a Zoning Board of Appeals, where literally the county board is indeed the zoning board. That does happen. It isn't the way it was set up, however, in Bureau County. So our only opportunity, and we followed the rules, was to talk to the Zoning Board of Appeals and present a record. Last time I went through this, that record took a year. To then think that that's a point in time meeting. Were you prohibited from sending any letters to the county board members? The law prohibits me from doing so. I mean, it is an improper ex parte communication. The Amy Holland case establishes that. Now the question is, is it prejudicial? It's the reason you don't have as many reversals. Even though they recognize that it's improper, they also say it's going to happen. It's almost inevitable is the word that they use. So then you have to go on to the next step. Is it prejudicial? Well, here it was beyond prejudicial. Here they were actually asking them to completely ignore the ZBA proceedings and relying on a promise, a false promise, that we're never going to use the extension anyway. Well, they want to use it. We're now four years later, and they want to use that extension. You know, there was an argument on a different track about the earlier dismissal by the trial judge, and there was an argument about whether or not that's jurisdictional and so forth when the trial judge denied it. But isn't there an issue about forfeiture? You filed a second complaint. You didn't appeal anything about the earlier dismissal. You filed a second complaint rather than appealing any dismissal decision, didn't you? Well, I'm not sure. The Second Amendment complaint incorporated that allegation that had been dismissed in a footnote. I think the issue is it wasn't mentioned in my notice of appeal. Or I'm sorry, I did not attach the dismissal order in my notice of appeal. My response to that is when it comes to jurisdiction, the law is absolutely clear. It can be raised in any court at any time. The court has a responsibility to expunge void orders. That's where this emanates from, not from 1201-2. But if there is ever a void order that a court finds, the law absolutely requires you. I'm trying to find my case quickly, and I'm not putting my hand on it. But the law requires you to expunge that order. That's what this is all about. And that's why even if I just dawned on me standing here right now, I could bring it up. Is that why with the recent Illinois Supreme Court case, a difference between void and voidable? I mean, the court had jurisdiction, right? No. Which court had jurisdiction? My point is the county board did not have jurisdiction. It lost jurisdiction to ever grant the CUPs in the first place. Because there was a statute that mandated them to do so within 30 days of the public hearing. They were way outside it. They were 71 days. And so there's all kinds of cases. There's been cases where they've missed it by three days, and the courts have said, oh, you blew it. You no longer had jurisdiction. That's void. Well, it is void. It was a nullity from the beginning, is the way the case is provided. And since it's a nullity back in 2008, there's nothing to extend in 2011. There was nothing to extend in 2016. And there certainly shouldn't be anything we're arguing about today, is what that argument's about, Judge. Two minutes, please. So I think I've touched on most of the issues. I just also want to point out that the court, because it misunderstood that Clarin was still good law, then refused to employ the LaSalle factors at all because this was an extension hearing as opposed to a CUP hearing that I was appealing from or seeking judicial review action from. And the only reason that he gave for doing that is that, well, I didn't find any cases that say you have to apply LaSalle factors to an extension hearing. Well, that's just wrong. Our Savior Evangelical Church case explicitly provides, quote, a court considering a zoning decision to no vote as a legislative decision will examine the zoning action for arbitrariness as a matter of substitute process under the six-part test set forth in LaSalle. And here's the big part. And any evidence received by the court must relate solely to those factors. That's our Savior case, 2009, quoting the Supreme Court case of Millennium. And we brought a substitute process claim. It doesn't matter if it was in the context of a CUP extension or a direct CUP. We allege substitute process violations. The Illinois Supreme Court has said you have to apply the LaSalle factors. We said this extension was going to negatively impact our property and our use and enjoyment of our property. Those are what the LaSalle factors all revolve around. Once we allege that, the court has a responsibility to give us our time at trial. Interestingly, Walnut Ridge Wind elected at the zoning level to not present any evidence on the impacts or lack of impacts to the neighbors, the LaSalle factors. It elected not to present any evidence of it at the trial court, even though we argued and the first judge agreed with us that the LaSalle factors apply. The only evidence of the impacts was from the plaintiff's side, and they showed the extreme impact this project was going to have. We did it with expert testimony, direct testimony. There was all kinds of testimony at the hearing that we attached to our summary judgment motion that went unrefuted. So if the court was wrong, and he was, that the LaSalle factors need to be applied here. The law is clear on that. Once we brought a substitute process claim, the court missed it. So what we're left with now is the only LaSalle factor evidence that was ever submitted was the plaintiff's. Therefore, not only should their motion of summary judgment be denied, but ours should be granted. What about 2.31 of the Bureau of County Zoning Ordinance, which spells out a procedure? It does spell out that a hearing is required. They follow that procedure, right, 2.31? Well, indeed the county held a hearing under 2.31, and the county, the ZBA, found that indeed under LaSalle factors, and there's 8.35 factors in the Bureau of County that mimic LaSalle, that under those, we win. They made a recommendation against approval. The county board didn't see that record, didn't attend those hearings, didn't have access to that record, and went ahead and voted in favor of it anyway. But that doesn't, all of that is a step removed from where the trial judge was. We then filed a complaint asserting substitute process violations, that what occurred at the county level is substantively, violates our due process, takes away our property rights. Once we did that, the court had a responsibility to use those LaSalle factors to determine if indeed we're correct, and therefore the underlying decision was arbitrary and capricious. That's the standard. You have to employ LaSalle once you've alleged a substitute due process violation. He said, no, no, it's an extension hearing, it's not a CEP hearing, I don't have to apply LaSalle. He ignored the fact that our allegation was explicit, a substitute due process violation allegation. Yeah, I'm having difficulty understanding how the, under your theory, how the board functions then. When the board can make this legislative decision, how do they function under your theory? They can't consider anything, they're not like their typical legislative decision making in a board meeting? They have a thorough record that I helped establish that they can review and consider and should be considering in order to make their decision. That was the point of the public hearing. Where does it say they have to review that? It doesn't say they have to review it. I personally believe it should. The case law doesn't say that. The case law says they have to have access to it. They don't even have access here. Well, there's no law that says we've got to review briefs either, right? Correct. But I know you do. But I'm sure, I don't know the law, but I'm sure there's a law that says you have to have access to that brief. Here, the county board didn't even have access to it. Worse, they relied on improper ex parte communications. The only thing we know they saw are the improper ex parte communications. It doesn't get any worse than the affirmative process standard. All they saw was this letter promising not to use the condition of use permits that they're here arguing they won't use. Several years later. Actually, it's seven years later. Any other questions? For those reasons, we respectfully request that the trial court reverse the decision in the circuit court's order granting Walnut Ridge wins most of its summary judgment and reverse the court's order denying the plaintiff's most of its summary judgment. Thank you for your time. Thank you, Mr. Sloan.  Thank you, and may it please the court, Jim Griffin on behalf of Walnut Ridge Wind LLC, the entity that hopes to develop this wind farm and the transmission line and substation, which Bureau County has approved in 2008 and again approved in extension in 2011. Let me ask you about that. Same question I ask you, opposing counsel. What effect is it that the county board issued those cuts 71 days after the last public hearing? Well, there's no impact. That does not invalidate that decision in any way. First, let's start with the impediments that the plaintiffs face in trying to make that argument to this court. Let's deal with my question first. And the statute says not more than 30 days after the last public hearing. So what import is that language? What effect does that have on a decision made by the county board more than 30 days after? Well, it doesn't have any decision on Bureau County, because the statute also states that any provision of a county zoning ordinance pertaining to wind farms that is in effect before the effective date of this Amendatory Act of the 95th General Assembly may continue in effect notwithstanding any requirements of this section. In other words, this section isn't applicable to a county that had already established its regulation of wind farms as Bureau County had prior to the effective date of this statute. And how Bureau County regulated wind farms is the same way they regulated almost every other land use in the county. They created a series of permitted uses in certain zoning districts and a series of conditional uses. And they designated a wind farm as a conditional use in the agricultural zoning district. And then what they required is if you file for a conditional use, you then go before the Zoning Board of Appeals. You have the public hearing process. The Zoning Board of Appeals then makes the recommendation. And that goes to the county board. And the county board then acts. But there's no 30-day requirement in the county's ordinance for it to act. Nor would they want to impose that when they have to first receive the recommendation from the zoning board. So one, that particular, to the extent that is a deadline, and I don't believe it is, Your Honor, that doesn't apply to Bureau County. Number two, there are due process rights that the plaintiff has argued. I don't see how you can construe this 30-day period as anything but directory. Because if you construe it as mandatory and say that the county loses jurisdiction, then all the county has to do is not take any action in 30 days. That's all they have to do. And then they lose jurisdiction. The applicant then, what, has to start over again? And what if they start over again and the county board doesn't act in 30 days again? There's no vehicle for the county board to be compelled to act under that scenario. And so they could never act on it. So that's why it's clearly directory, if anything. Meaning that it's not an avoidable act if it happens after the 30 days. And the key in the directory mandatory analysis is typically whether there's negative language prohibiting action after the deadline. There's nothing in 5-12020 which says the county board may not render a decision if it's 30 days after the close of the public hearing. There's nothing in that statute that provides that type of negative language, which the courts have utilized to then say it's mandatory. And, you know, we cited case law, we cited annexation case law, where the state statute says the court has to hold a hearing within so many days after the application. And then the court doesn't hold that hearing within so many days due to various logistical issues. And the courts have said, well, it's a directory. It's a directory provision which is intended to essentially emphasize that the – and let me add one more thing about the mandatory directory. It also comes into play where if the passage of time can have a prejudicial effect on a party. There's those liquor license cases where the liquor license has been suspended. So there's a party out there that's being harmed by the length of time that an administrative decision may take to reach. You don't have that in this case. There's no prejudice by any party, certainly not by the objectors to the project, if it takes longer for the county board to approve the project. They're not in any way harmed by that delay. Perhaps the applicant's harmed by that delay, but certainly other landowners are not. Additionally, the statute 5-12012.1 was in effect in 2008, and that required challenges to zoning decisions to be made in 90 days. And the plaintiffs didn't challenge the original grant of the CUPs within 90 days. They didn't challenge it until 2011 when the extensions were granted. Judge Lannon dismissed those claims in two different orders and found that the plaintiffs didn't satisfy the limitations period, therefore they couldn't bring the suit. And the notice of appeal that was filed in this case didn't refer to those orders, didn't cite those orders at all in the notice of appeal. And that's a jurisdictional element for this court, just as filing a notice of appeal in 30 days is. So there is no jurisdiction for this court to consider that matter because those orders weren't appealed from. They weren't included in the notice of appeal. Well, what's the effect of filing a second amended complaint and not appealing and filing a second amended complaint? Is that a forfeiture of the earlier claim? Well, I think that the plaintiff did include in a footnote that for purposes of preserving any rights to appeal, by refiling they were not waiving their claims to later appeal those. So we haven't argued a forfeiture based upon the fact that they did that. Okay, but what's the impact? Well, arguably since they didn't address that either in the summary judgment proceedings or file any motion to reconsider nor address it in their notice of appeal, then I do think the issue is clearly waived. I think it's more than waived, I think it's jurisdictional because the notice of appeal doesn't include that order, those orders that dismiss those matters. I want to ask you about the letters that were sent to the board members outside of the zoning board of appeals hearing process. Those letters, they request approval because of the six and financing or we're going to move on to something later, right? They didn't just vote for it because it's a good thing and we like it. They actually made some representations in the body of the letter. Correct. The cases seem to say that when you start doing that, then as a matter of due process that you have to allow the other side to have that information and to also be able to counter it, to ask questions about it, do something other than just say, oh, yes, they're for it, we're against it. Aren't they supposed to be given certain rights to address those things and the claims that are made in those letters? No, there's no case law or statute that would prohibit, which is what the plaintiffs are asking to do, prohibit an interested party from communicating with a legislature concerning a zoning matter that's pending before them. There's never been an Illinois case that has held that those types of communications were prohibited. The due process rights, the procedural due process rights, are notice and a right to a hearing. And that's the Pasolino case, Illinois Supreme Court decision. Notice and a right to a hearing. Now, Clearan was before that, but Clearan, the Clearan decision, reiterated a prior second district appellate court decision that had held that at a public hearing like that on a zoning matter, there's a right to cross-examination. And what happened in Clearan is there was no right to cross-examination. And that was the issue that was disputed, that was the main issue that was disputed in the case. And so the Supreme Court said there is a right to cross-examination at the public hearing. And the plaintiffs in this case received all those procedural due process rights, although let me point out, this is an extension of time. This is not an original grant of conditional use or special use. There's nothing in the state statute that says you get a public hearing when you're asking for an extension of time. But nonetheless, the county did provide a public hearing. They did provide notice. The plaintiffs participated. The plaintiffs had their attorney there presenting evidence and cross-examining witnesses. Well, let me ask you this. What's the whole point of a public hearing if one party can go out and hand evidence outside of that public hearing to the fact finder? Well, because if there's not the fact finder, to the extent there is one, the zoning board takes the record and makes its recommendations to the county board. The county board does not have anything as a... Well, the decision maker is the county board members. They're elected representatives. And the reasons why they might vote for or against a zoning matter, they may be reflective in whatever the record is, or they may not. Well, I'm just wondering why go through the charade of a public hearing if people can ex parte communicate evidence to the county board. Well, because there's constitutional rights that citizens have to communicate with their legislators. Well, there's no question. The citizen's not breaking the law for sending it there, but the question is whether the county board ought to act on evidence it receives ex parte. Well, I think there's never been an Illinois case that suggests that interested parties cannot communicate with elected officials concerning zoning matters that are pending. The statute you refer to says that the decision, the county board decision, is subject to a de novo review as a legislative decision. So what does that mean, de novo review? Well, de novo clearly means it's a forward-looking process where you're not going to... Who said what to who is not going to be relevant. You're going to be looking at whether there was a rational basis for that decision. That rational basis may or may not be consistent with what was presented at the public hearings. In this case, it was. The same information that Walnut Ridge Wind presented, why they want the extension, was the same information we then presented to the trial court. It had to do with the money that was spent and commitment to the project. Okay. I mean, certainly, the First Amendment is still barely alive. But as a tribunal here making a decision, I mean, if I walk out of here tonight, not one of the lawyers, but somebody who knows me, calls up and says, Hey, Dan, I see you're on that Wind case. Let me tell you this. Well, I don't think that citizen is breaking the law, but I've got a duty to come back and say, Hey, folks, I've just had an ex parte communication made to me and I'll take whatever action is appropriate based on that. I said the lawyers are either just recusing myself or doing whatever is necessary. But the fact that, I mean, the argument seems to be there's nothing says citizen can't communicate with them. Well, that's right. I think they can. But the issue is what does the decision maker, can they act on that? Well, I mean, in this case, I think it's very clear that in Anthony v. City of Kiwani, it's a third district case, states that zoning ordinance are enacted under legislative authority and are legislative acts. And in that case, they said we're not going to get into why the county, or in that case, the city councilman, why they voted in favor of something or why they didn't, or what they reviewed or what they redidn't, because it's a legislative act. And so we're going to review it as a legislative act. So your question is can a county board member act upon that? The bigger question is can this court inquire as to why the county board member voted the way they did? And I think the answer is clearly no, unless there's some fraud or bribery or something like that. The answer is no, because then every legislative decision is open to why did the county board member do that? Did the county board member understand what he was voting on? Maybe the county board member voted on it because his fellow board member, you know, agreed to vote on something else that he wanted to see passed. It's the political process. Well, I get that part of it. But if you take that argument to its extremes, then you have also got the public hearing is nothing more than a charade. If the parties can transmit evidence outside of that hearing, then what's the point of the hearing? And due process of somebody to be able to know, I mean, if you've got due process, it seems to me to have notice about what it is they want to do and why they want to do it and what their arguments are to support it. And what evidence, and I get to come in and try to counter the examiner. I mean, that's the whole due process drill. And so, but I agree with you. Not so much why did somebody subjectively, but when you have evidence of ex parte communications, to what effect does that have on due process? Well, I think, Your Honor, you've got a bifurcated system where you've got a public hearing that occurs before a zoning board. There's notice, and there's a right to be heard, and there's a right to cross-examination and present evidence. And that's part of the process. There's also, though, the legislative process. And that legislative process occurs after that public hearing process ends. And that's not subject to due process. There's no due process requirement that the plaintiffs have when this matter gets presented to the legislative body that's making its decision. And so, there's both aspects of the procedural due process, and then there's aspects of the legislative decision. I think that in the Mercatus Group, that's the Seventh Circuit decision, that looked at ex parte lobbying, as it was called. And they said, well, that's perfectly valid. There's nothing wrong with constituents and interested parties communicating their position to, in that case, village board members. I think that's where the dividing line, or where the line in the sand is. If it is simply voicing an opinion, a yea or a nay, based on the evidence that the voting board already has, or they've been refuted, then I think it's okay. I think in the town of Ottawa, once you have an ex parte communication, whether or not it's proper, I think then you have to look at whether or not it was relied on, whether it was an unfair communication, because it appears to me, did you rely on that when you made your decision, or was that information something that the other side had at that zoning board hearing that could be questioned or refuted? If it was something that had already been presented and it's just a follow-up letter or something, I think that's one thing. But if it's all brand new, then that town of Ottawa case seems to say to us that we have to look at it and determine whether or not it impacted that decision-making enough or had the potential to that it was unfair and it needs to go back. But you're saying none of that, that that's not? No, because all those cases, every one of those cases are Environmental Protection Act Pollution Control Board cases. Every one of them. And they're not citing zoning cases, and the zoning cases that we've argued here aren't citing the Environmental Protection Act cases. And there's a very important reason. It's because it's a different process. The Environmental Protection Act cases are statutory proceedings where the county board or the city council, by statute, is acting as an adjudicative body. And they have these provisions in the Environmental Protection Act that they're required to follow. And, in fact, local counties and municipalities can't regulate pollution control facilities under their zoning. That authority was removed. So it's a completely different process. And that's why, if you look at the case law on pollution control facilities, they're never citing the zoning cases. And that's because they're different concepts, different processes. One is adjudicatory, one is legislative, as the state law provides. And let me address, even if the court were to adopt every argument the plaintiffs make about ex parte communications, where the plaintiffs have utterly failed to establish that this court should invalidate the county board's decision is, even under those pollution control board cases, they say the objector, those challenging the decision, has to prove that the ex parte communications influenced the decision. That's part of it. You just don't show there's ex parte communications. You have to show that it influenced the decision. There is not a single citation to this record showing in any way how those letters influenced any county board member's decision. I don't even believe there's a citation in this record showing that a county board member read the letters. And that's part of plaintiff's burden. They have that burden on summary judgment to show evidence establishing that those ex parte communications, which we don't believe they're ex parte, influenced the decision. And I would invite you to look at their briefs. Page 28 of Plaintiff's Opening Brief, they say it's clear it influenced the decision. Not a single cite to the record of a fact supporting that conclusion that they made. So even if the court adopts all the arguments that plaintiffs have made,  county boards, 16 members who voted in favor of this extension, were in any way influenced by these communications. And, of course, these communications weren't by Bernard Berfel, some involved citizen who wants to contact his board member and get his opinion. They're by a party. And it would certainly be fair to say that the purpose of the communication was to influence the decision. Your Honor, the E&E Holland case versus Pollution Control Board, again, I would recommend that the court not follow those Pollution Control Board cases because you're getting into different areas than zoning. Even in that case, there was four meetings between the applicant, their attorney, and county board members. Four meetings, in-person meetings. And the appellate court looked at it and said, there's nothing in the record indicating it in any way influenced the ultimate decision. So we're not going to invalidate the decision. And here you have two letters that no county board member, there's no evidence they even read them. So much, much weaker case than in the E&E Holland. Much weaker. In fact, cases beyond weak, they have no evidence to support it. I would ask the board to keep in mind this was an extension of time that the county board granted under Section 2.31 of the Bureau County Zoning Ordinance, which allows an applicant to come in and state the reasons why they want an extension. There's no requirements under state law for a public hearing. There's really even no requirement for a public hearing under the county ordinance. It just has to appear before the zoning board. So the plaintiffs in this case received much, much more due process than they were entitled to or could have been entitled to under state law or local law. And after hearing, and the county board therefore had a rational basis to make their decision because of the millions of dollars that the applicant had spent and was continuing to spend in pursuit of this project. So we would ask you to affirm the trial court's decision. Thank you. It has to be a rational relationship to the legislative purpose. Correct. And the legislative purpose was an extension of time here. And we demonstrated that we've made a tremendous investment and we're continuing to invest and wanted to build the project. That is a good basis for an extension. Thank you. Thank you, Mr. Griffin. Mr. Porter. Five minutes? Yes. Toward the end of counsel's presentation, he made, again, a statement that is simply untrue. He said that the landfill cases involved an adjudicatory process, but this involved a legislative process. That's where they don't understand the law. Clarence establishes this is a quasi-adjudicative process, an administrative process. The statute only affected the standard of review. It is reviewed as a legislative decision, though for another purpose it is indeed adjudicative. The Mercatus case held that. The Arcevia case held that. No time has Clarence been reversed, despite counsel's wish to the contrary. We were entitled to a public hearing. As a matter of fact, they had to have a public hearing under the 1202 statute. A hearing, not a meeting. That means we had a right to present evidence. That means we had a right to cross-examine witnesses. We had a right not to be subjected to ex parte communications. We had a right to expect that the county board would have access to the actual record. We have a right to believe that the court, I'm sorry, that the Bureau of County would only extend a permit that it had jurisdiction to extend. And there was no jurisdiction because the original county lost jurisdiction in 2008. Counsel brought up that, counsel brought up in questioning from Justice Schmidt that the language of 12020, that any provision of a county zoning ordinance pertaining to wind farms that is in effect before the effective date of this mandatory act may continue in effect, notwithstanding the requirements of this section. What he failed to tell you was there was no wind farm statute in effect at the time that this passed. He's just saying, well, they had general zoning laws, they had special use hearings, this was a special use, and we went. That language only protected wind farm statutes that were already in place. That's what that was all about, is when they passed this wind farm statute, some of the counties had already established their own wind farm ordinances, establishing requirements as far as heights and setbacks and so forth, and they didn't want to have those all thrown out on their ear. Not the general zoning laws. If that was the case, then this law would have absolutely no effect whatsoever. They had a responsibility to comply with the 30-day requirement. Counsel's argument that that was directory has been refuted numerous times. The Carradine case, statutes that contain negative words denying the exercise of power after the time named, or when a disregard of its provisions would injuriously affect public interest or private rights, is not directory, but mandatory. This case is almost identical to the Grotto case. In the Grotto case, it was a special use hearing, and an appeal, and the plaintiffs were alleging that the county, DuPage County, had no jurisdiction. And they tried to bring that after the 20 days they had to appeal. There was an ordinance in place that limited to 20 days in that case. The trial court said, no, you didn't bring that issue up within the 20 days. The appellate court reversed, saying jurisdiction can be brought up anytime. Explicitly what it said was, the special use permit was null and void because the jurisdictional prerequisite of notice had not been met by the county board. That's the exact same claim we're making here. In 2008, the county board never had jurisdiction. The exact same situation happened. The trial judge said, no, you had to appeal that 90 days from 2008. The clients didn't even know me in 2008. I wasn't hired. We didn't appeal in 2008. And of course, that hinges on whether the 30-day language is not more than 30 days, is mandatory or directory, right? Correct. And the case law is absolutely on my side. I direct the court's attention to Foley v. Civil Service Commission, which had the language, no longer than seven days after termination. That's the negative language that makes it mandatory. Lincoln Park Realty v. Chicago Commission, no report should be delayed more than 60 days. Again, they found that negative language, no more than, to be mandatory. And the Puss in Boots case is another one that had that same mandatory no more than language. And that's exactly what ours says. Not more than 30 days. All those cases were known to the legislature when the statute was drafted, by the way. So if they had wanted to make it only directory, they did not have to use that not more than language. They could have done what counsel hoped they had done, which would just say that they are to make a decision. But they didn't. They said not more than 30 days to make a decision. There's a reason for that, by the way, because you want the information to be fresh as to the county board decision to be made. You don't want the parties waiting for a long time before the decisions are made. There's valid reasons for having that not more than requirement, including payment of attorneys, et cetera. Counsel stated that there are no cases that disallow the communications that were at issue here. That's simply wrong. The Supreme Court has said that this process is adjudicative. There are many cases that say in an adjudicative process you cannot have ex parte communications. It just so happens that most of the cases that come out of Illinois do emanate from the landfill context. And remember, the landfill, that's E&E hauling and all its progeny, the Ottawa case, all of those do come out of the landfill context. But remember, in the landfill context, all that's required there is fundamentally fair proceedings. And they still found it was improper to have prejudicial ex parte communications. They don't even have the due process requirement protections that my clients enjoy or were supposed to enjoy at the special use hearing. Clearly, we're entitled to at least what you get at a landfill hearing that's exempted from the zoning process. And we're at least entitled to a fundamentally fair hearing, are we not? And this communication is clearly ex parte. The issue, by the way, we don't have to prove the prejudice occurred. We have to prove that indeed there was a propensity that it may have influenced the decision. That comes down to looking at the document and making that decision. Regardless, we alleged it. We indeed argued it at summary judgment. And it was never refuted in any respect at the trial court level, never denied at the trial court level that it was prejudicial. And so that, counsel's just wrong. We're not allowed to get into the mental impressions. Why did you vote the way you did? But you need to look at the document. The court's required to look at the document and determine, does this have a propensity to influence? Well, there's no way you can look at an April 8th letter and not realize that's going to influence the decision. For those reasons, with respect to the request, our summary judgment will be granted, and theirs reversed and denied. Thank you. Thank you, Mr. Fork. Thank you, Mr. Griffin. You drew up your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now, we'll stand in a brief recess for a panel discussion. Thank you.